UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VALERIE J. SMITH,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-663
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

**I. Procedural Background**

Plaintiff filed an application for DIB in January 2010, alleging disability since April 1, 2008, due to schizoaffective disorder, major depressive disorder, post traumatic stress disorder (PTSD), diabetes, hypertension, and asthma. (Tr. 149). Plaintiff's application for DIB was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 4, 2012, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

I. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

    **B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since April 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: major depressive disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple repetitive tasks, with superficial interaction with the general public and coworkers. In addition, the [plaintiff] should have a relatively static or stable work place without strict quota requirements.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The [plaintiff] was born [in] . . . 1957 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[1]
>
> 11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 1, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 15-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a two-fold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled occupations such as laundry worker (450 jobs locally and 26,000 jobs nationally), night cleaner (1,500 jobs locally and 150,000 jobs nationally), bakery racker (2,500 jobs locally and 394,000 jobs nationally), laundry aide (2,000 jobs locally and 900,000 jobs nationally), and vending machine operator (260 jobs locally and 49,000 nationally). (Tr. 21).

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff assigns four errors. First, plaintiff argues that the ALJ erred by failing to evaluate all of the relevant medical opinions of record. Specifically, plaintiff alleges that the ALJ failed to discuss or consider the mental limitations assessed by consultative examining psychologist Dr. Christopher Ward, Ph.D., in his April 2009 evaluation, and the ALJ gave no explanation for crediting the opinions of the non-examining state agency psychological consultants over the opinion of Dr. Ward. (Doc. 10 at 2-3). Second, plaintiff alleges that the ALJ "ignored the treating physician rule" by failing to credit a medical assessment co-signed by psychiatrist Dr. Tracey Skale, M.D., on May 27, 2012, and Dr. Skale's supporting progress note dated April 30, 2012. (*Id*. at 1, 4-5). Plaintiff argues in her reply brief that a remand under Sentence Six of 42 U.S.C. § 405(g) is warranted for consideration of this "new" and "material" evidence, which plaintiff submitted after the ALJ issued her decision. (Doc. 16 at 4-6). Third, plaintiff contends that the ALJ erred by dismissing the opinion of Ann Fulton, PMHNP, a nurse practitioner who qualifies as an "other medical source" under the Social Security rules and regulations. (Doc. 10 at 1, 5-6). Fourth, plaintiff contends that the ALJ erred by selectively citing evidence out of context to support the conclusion that she is not disabled.[2] (*Id*. at 6-7).

---

[2] The Court will consider plaintiff's assignments of error in a different order than plaintiff has presented them.

5

**1. Whether the ALJ erred by failing to evaluate the medical opinion evidence (First assignment of error)**

Plaintiff alleges that the ALJ erred by failing to evaluate or weigh the opinion of consultative examining psychologist Dr. Ward. (Doc. 10 at 2-3). The Social Security regulations provide that the Agency will evaluate every medical opinion it receives, regardless of the opinion's source. 20 C.F.R. § 404.1527. Unless a treating source's opinion is given controlling weight under § 404.1527(c)(2), all of the factors listed in § 404.1527(c) will be considered in determining the weight to give a medical source opinion. 20 C.F.R. § 404.1527(c). These include the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6).

Dr. Ward conducted a clinical interview of plaintiff and prepared a report dated April 1, 2009. (Tr. 373-77). Dr. Ward diagnosed plaintiff as suffering from polysubstance dependence in early remission and bipolar disorder NOS. (Tr. 376). Dr. Ward opined that plaintiff's ability to relate to others, including fellow workers and supervisors, was slightly impaired; her ability to understand, remember and follow simple instructions was slightly impaired; her ability to maintain attention, concentration, persistence and pace was moderately to markedly impaired and this ability would "likely improve with extended sobriety"; and her ability to withstand the stress and pressure associated with day-to-day work activity was moderately to markedly impaired, and this ability would also "likely improve with extended sobriety." (Tr. 377).

In assessing plaintiff's degree of mental impairment under the "paragraph B" criteria,[3] the ALJ expressly relied on Dr. Ward's consultative examination findings. The ALJ noted that plaintiff reported to Dr. Ward that she has difficulty interacting with others due to a lack of trust

---

[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

6

(Tr. 16, citing Tr. 373-77), and the ALJ concluded based on plaintiff's report and the other evidence of record that plaintiff has moderate difficulties in social functioning. (Tr. 16). The ALJ also acknowledged that Dr. Ward found plaintiff's attention, concentration and remote recall to be adequate when he assessed her at the consultative examination. (*Id.*, citing Tr. 373-77). Based on these findings and plaintiff's testimony, the ALJ assessed plaintiff as having moderate difficulties with concentration, persistence or pace. (Tr. 16). The ALJ also discussed Dr. Ward's consultative examination findings and opinions when assessing plaintiff's credibility. The ALJ noted that Dr. Ward is a licensed psychologist who performed a mental status examination in early 2009 and found that plaintiff's intellectual functioning fell in the below average range; her remote recall, attention and concentration were adequate; she had difficulty interacting with people; and her short-term memory was below average. (Tr. 18, citing Tr. 373-77). The ALJ concluded based on the "objective evidence from [Dr. Ward's] exam" that plaintiff has "limitations in social functioning and in performing detailed tasks or instructions." (Tr. 18).

Plaintiff alleges that although the ALJ referenced Dr. Ward's April 1, 2009 evaluation in her decision, the ALJ erred by failing to explain the weight she gave Dr. Ward's opinion.[4] (Doc. 10 at 2-3; Doc. 16 at 1-3). Plaintiff alleges that the ALJ's error deprives the Court of an opportunity to conduct any meaningful review of the ALJ's decision. (Doc. 16 at 1-2). Plaintiff further contends that the ALJ's omission was not harmless because Dr. Ward's report conflicted with evidence that the ALJ credited, *i.e.*, the opinions of non-examining state agency psychologists Drs. Frank Orosz, Ph.D., and Dr. Leslie Rudy, Ph.D. Specifically, plaintiff contends that Dr. Ward opined that plaintiff had "moderate to marked" limitations in her ability

---

[4] Plaintiff alleged in her Statement of Errors that the ALJ failed to mention Dr. Ward's consultative examination in her decision. (Doc. 10 at 3). However, plaintiff acknowledged in the reply memorandum that the ALJ did reference Dr. Ward's examination. (Doc. 16 at 1).

7

to maintain concentration, persistence and pace and in her ability to withstand the stress and pressures associated with day-to-day work activity; however, Drs. Orosz and Rudy opined that plaintiff had only "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Doc. 16 at 2). Plaintiff contends that the ALJ erred by failing to explain why she gave greater weight to the opinions of the non-examining psychologists, which conflicted with Dr. Ward's opinion. (Doc. 10 at 3). The Commissioner alleges that the ALJ properly evaluated Dr. Ward's opinion and assessed work-related limitations to account for those findings of Dr. Ward which the ALJ credited. (Doc. 15 at 5-6).

Upon review of the ALJ's decision and the evidence of record, the Court finds the ALJ fulfilled her duty under 20 C.F.R. § 404.1527 to evaluate Dr. Ward's opinion. In her decision, the ALJ stated that she was giving "great weight" to opinions rendered by plaintiff's treating psychiatrist, Dr. Wayne Harrison, M.D., and the non-examining state agency psychologists, Drs. Orosz and Rudy. (Tr. 19). The ALJ did not state what weight she was giving Dr. Ward's opinion. The ALJ nonetheless discussed Dr. Ward's consultative examination report and expressly relied on Dr. Ward's findings when assessing plaintiff's mental functioning. (Tr. 16, 18). Having evaluated Dr. Ward's opinion and weighed the other mental health assessments of record, the ALJ's failure to explicitly weigh Dr. Ward's opinion is not a sufficient basis for reversing the ALJ's decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (although it "might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion," the ALJ "can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). As in *Kornecky*, no purpose would be served here by remanding this matter for the ALJ to explicitly address what weight she gave the opinion of the consultative examining medical provider. *Id.* at

8

507. The ALJ fulfilled her obligation to evaluate Dr. Ward's opinion. Plaintiff's first assignment of error should therefore be overruled.

**2. Whether the ALJ erred in weighing the opinion of nurse practitioner Fulton (Third assignment of error)**

Plaintiff alleges that the ALJ erred by giving greater weight to the opinions of non-examining medical sources Drs. Orosz and Rudy than she gave to the opinion of nurse practitioner Fulton. (Doc. 10 at 5-6; Doc. 16 at 6-7). Plaintiff asserts that nurse Fulton treated her on several occasions and her opinions were consistent with the evidence as a whole. The Commissioner argues that the ALJ reasonably relied on the evidence to find that nurse Fulton's opinion was not supported by the evidence. (Doc. 15 at 10-12).

Nurse Fulton issued a Medical Source Statement dated February 8, 2012. (Tr. 986-88). She assessed plaintiff as having primarily "marked loss" (ability to sustain performance only up to one-third of an 8-hour workday) in numerous subcategories grouped under the mental abilities of understanding, carrying out and remembering simple instructions; making simple, work-related decisions; responding appropriately to supervision, co-workers, and work situations; and dealing with changes in a routine work-setting. (Tr. 1008-09). The ALJ considered nurse Fulton's opinion that plaintiff had marked limitations in concentration, persistence and pace, social functioning, and adaptation to work settings, but she gave the opinion "limited weight." (Tr. 19). The ALJ rejected the opinion on two grounds: (1) nurse Fulton is not a doctor, and (2) the objective medical evidence of record did not support her opinions. (*Id.*). The ALJ instead gave "great weight" to the following opinions: (1) treating psychiatrist Dr. Harrison's opinion that plaintiff has moderate limitations in concentration, persistence and pace, and specifically with respect to understanding, remembering and following instructions; and (2) the opinion of non-examining state agency psychologists Drs. Orosz and Rudy that plaintiff has moderate

9

limitations in performing detailed work and interacting with the public, coworkers, and supervisors. (Tr. 19).

Only "acceptable medical sources" as defined under 20 C.F.R. § 404.1513(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Nurse practitioners are not "acceptable medical sources" under the regulations but instead fall under the category of "other sources." *Id.*; 20 C.F.R. § 404.1513(d)(1). Although information from "other sources" cannot establish the existence of a medically determinable impairment, information they provide "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. The opinions of medical sources such as nurse practitioners who are not deemed "acceptable medical sources" under the regulations "are important and should be evaluated on key issues such as impairment severity and functional effects," together with the other relevant evidence in the file. *Id.* at *3. Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include the nature and extent of the relationship, the source's qualifications and specialty or area of expertise, how consistent the opinion of the source is with other evidence, the degree to which the source presents relevant evidence to support her opinion, and any other factors that tend to support or refute the opinion. *Id.* at 4-5. *See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p, 2006 WL 2329939, at *5.

10

The ALJ may reasonably give greater weight to an opinion from an "acceptable medical source" than to an opinion from a medical source who is not an "acceptable medical source" on the ground "acceptable medical sources" are "the most qualified medical sources." *Id*. It may be appropriate for the ALJ to give more weight to the opinion of a medical source who is not an "acceptable medical source" if the medical source has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for her opinion. *Id*.

Plaintiff has not shown that the ALJ erred by crediting the opinions of the "acceptable medical sources" over the opinion of nurse practitioner Fulton. First, the ALJ was entitled to discount nurse Fulton's opinion given that she was not the most qualified medical source who rendered an assessment of plaintiff's limitations. Plaintiff's treating psychiatrist, Dr. Harrison, and several psychologists gave opinions of plaintiff's mental limitations which the ALJ could reasonably credit over nurse practitioner Fulton's opinion. Further, substantial evidence supports that ALJ's finding that nurse practitioner Fulton's conclusions were not supported by the objective evidence of record. Plaintiff alleges that nurse Fulton's "treatment notes from GCBHS [Greater Cincinnati Behavioral Health Services] are provided at Tr. 829-970" and show nurse Fulton's opinion is better supported than the opinions of the "acceptable medical sources." (Doc. 10 at 6). In fact, however, only a small portion of these treatment notes are attributable to nurse Fulton.[5] Her treatment notes cover the time period from May to November 2011 and document four treatment sessions with plaintiff. (Tr. 829-43). Further, plaintiff cites only one

---

[5] The remaining records and notes from GCBHS appear to be case management notes - not mental health treatment notes - for the period January 2010 through January 2012. (Tr. 844-970).

11

treatment note to show that nurse Fulton provided better support for her opinion.[6] (Doc. 10 at 6, citing Tr. 832). This is nurse practitioner Fulton's most recent treatment note dated November 8, 2011. The treatment note states that plaintiff reports she is doing "ok," that her "medications continue to work well," that she still has "baseline paranoia," that she has "situational depression," and that she felt she functioned well overall around the house but would take her time when she left the house because she did not have "many reasons to get out of the house." (Tr. 832). Nurse Fulton reported that plaintiff's affect was flat and her mood was constricted/blunt, but she was pleasant and cooperative, her speech was within normal limits, she was oriented "x4", and there were no overt signs of psychosis. (*Id.*). The ALJ reasonably determined that these findings did not support nurse Fulton's assessment of consistently "marked" limitations. (Tr. 19).

Thus, while it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source," the ALJ did not err by failing to do so under the circumstances of this case. The ALJ reasonably determined that nurse Fulton's opinion was not supported by objective evidence and that the opinions of plaintiff's treating psychiatrist and the non-examining psychologists were entitled to greater weight. Plaintiff's third assignment of error should be overruled.

**3. Whether the ALJ erred by selectively citing evidence to support a finding of non-disability (Fourth assignment of error)**

Plaintiff contends that the ALJ erred by selectively citing evidence out of context to support the conclusion that she is not disabled. Specifically, plaintiff alleges that the ALJ misrepresented that plaintiff's auditory hallucinations are completely controlled by medication;

---

[6] Plaintiff also cites a progress note prepared by Dr. Tracey Skale, M.D., as supporting evidence. (Doc. 10 at 6, citing Tr. 1011-13). For the reasons explained in connection with plaintiff's fourth assignment of error, the Court cannot consider evidence that was submitted after the ALJ issued her decision in determining whether the ALJ's decision is supported by substantial evidence.

12

the ALJ overstated plaintiff's ability to perform activities of daily living by stating she could prepare meals and watch television, among other activities, without qualification; and the ALJ relied on select portions of an "outdated" May 2009 Mental Status Questionnaire completed by plaintiff's treating psychiatrist Dr. Harrison, which were contradicted by later medical information. (Doc. 10 at 6-7).

Plaintiff has not shown that the ALJ erred by selectively citing evidence that supported a decision to deny benefits. In her decision, the ALJ stated that plaintiff testified to hearing voices but that the medication Abilify "quiets the voices in her head." (Tr. 18). This is an accurate restatement of plaintiff's testimony. (Tr. 40). As for plaintiff's daily activities, the ALJ found that plaintiff was capable of preparing meals and watching television. (Tr. 18, citing Tr. 158-69). Plaintiff suggests this was error because she testified at the ALJ hearing that she cooks only simple microwaveable meals and often worries people have tampered with her food, and she cannot pay attention long enough to watch an entire television program. (Doc. 10 at 7, citing Tr. 41, 42). However, plaintiff's self-reports of her daily functioning and testimony provide support for the ALJ's finding that she is capable of preparing meals and watching television, as well as performing other activities.[7] (Tr. 164-68, 41-42). Plaintiff has not shown the ALJ improperly cited evidence out of context when making these findings.

Further, plaintiff has not demonstrated that the ALJ improperly "chose the responses in the outdated Mental Status Questionnaire" prepared by Dr. Harrison to reach a decision to deny benefits. (Doc. 10 at 7). Plaintiff does not offer a valid explanation for why the questionnaire is "outdated." (*Id.*). Dr. Harrison completed the questionnaire on May 20, 2009. (Tr. 429-32). He indicated he had first seen plaintiff on April 2, 2008, and had last seen her on May 20, 2009. (Tr.

---

[7] Although the ALJ did not accept all of plaintiff's allegations regarding her limitations in her activities of daily living as credible, plaintiff does not allege that the ALJ failed to perform a proper credibility analysis.

432). Thus, Dr. Harrison treated and evaluated plaintiff during the alleged period of disability. Plaintiff suggests that the ALJ nonetheless should have not have considered Dr. Harrison's "comments about [plaintiff's] functional limitations" because they were "contradicted by later medical information." (Doc. 10 at 7). However, plaintiff has not identified the medical evidence of record that allegedly contradicts the treating psychiatrist's findings. Plaintiff therefore has not shown that the ALJ erred by crediting findings from the treating psychiatrist's report for these reasons.

Plaintiff further contends that the ALJ erred by giving "great weight" to Dr. Harrison's opinion that plaintiff had moderate limitations in concentration, persistence and pace but failing to reference Dr. Harrison's comments about plaintiff's "deficiencies in social interaction." (Doc. 10 at 7). Specifically, the ALJ did not mention Dr. Harrison's findings that plaintiff can become "paranoid" about others, her adaptation skills are "marginal," and she would react "poorly" to the pressures of a work setting involving simple, routine and repetitive tasks. (Tr. 431). However, the ALJ did not ignore plaintiff's limitations in the area of social interaction. To the contrary, the ALJ acknowledged that plaintiff has moderate difficulties in social interaction (Tr. 16, 18), and the ALJ restricted plaintiff to superficial interaction with the general public and coworkers to account for her limitations in this area. (Tr. 17). Nor did the ALJ fail to consider plaintiff's difficulties with handling workplace stress. The ALJ restricted plaintiff to simple repetitive tasks, a relatively stable or static work environment, and no strict quota requirements, which is consistent with functional restrictions imposed by the state agency reviewing psychologists. (Tr. 17; Tr. 428, 585). Plaintiff has not cited any evidence in the record to show that additional restrictions were required to account for Dr. Harrison's findings regarding plaintiff's deficiencies in adaptation skills and handling workplace stress. *See Bowen*, 478 F.3d at 749 (noting that a

treating source's general findings are relevant but absent an RFC assessment do not speak directly to whether a plaintiff's RFC allows the plaintiff to work despite her mental impairment).

For these reasons, plaintiff's arguments that the ALJ selectively cited evidence which supported a decision to deny benefits are not well-taken. Plaintiff's fourth assignment of error should be overruled.

**4. Whether a Sentence Six remand is warranted (Second assignment of error)**

Plaintiff alleges as her second assignment of error that the ALJ "ignored the treating physician rule." (Doc. 10 at 1). The substance of this assignment of error is that this matter should be remanded for consideration of additional evidence under Sentence Six of 42 U.S.C. § 405(g). This evidence consists of two documents that were submitted after the ALJ issued her decision and before the decision was affirmed by the Appeals Council. (Tr. 1011-13). The Appeals Council stated that it considered the additional evidence submitted by plaintiff but found it did not provide a basis for changing the ALJ's decision. (Tr. 1-2).

The first document is a progress note dated April 30, 2012, prepared by Dr. Skale, a psychiatrist with GCBHS. (Tr. 1011-13). The progress note states that plaintiff was last seen on November 8, 2011. (Tr. 1011). Dr. Skale quoted plaintiff as reporting that "Disability says an MD needs to sign my disability form." (*Id.*). Plaintiff reported that "Abilify helps me." (*Id.*). Plaintiff informed Dr. Skale that she hears voices which "mostly they say bad things. . . ." (*Id.*). Dr. Skale reported that plaintiff had ongoing paranoia and that she worried about her food being tampered with. (*Id.*). Dr. Skale reported that plaintiff had not taken any medications since February and that plaintiff was missing appointments and medications. (Tr. 1012). Dr. Skale diagnosed plaintiff as suffering from schizoaffective disorder and PTSD. (Tr. 1011).

15

The second document is a copy of the Medical Source Statement which was completed and signed by nurse Fulton in February 2012, but this copy includes the co-signature of Dr. Skale. (Tr. 1008-10). Dr. Skale co-signed the statement as "medical collaborator" on May 27, 2012, and wrote below her signature: "Please see nurse Fulton's notes." (*Id.*).

Plaintiff alleges in the Statement of Errors that the Appeals Council did not properly evaluate these two documents, which she asserts constitute new and material evidence. (Doc. 10 at 4-5). Plaintiff alleges that the Medical Source Statement signed by Dr. Skale is material because the limitations set forth in the assessment are work-prohibitive; the ALJ dismissed the assessment because only nurse Fulton had signed it and she is not a doctor; and given that Dr. Skale, a "treating physician," has now signed the assessment, it should be reviewed more thoroughly consistent with the "treating physician rule." (*Id.*).

In response, the Commissioner correctly contends that because Dr. Skale's progress note and opinion were not before the ALJ, the Court cannot consider these documents in determining whether the ALJ's decision is supported by substantial evidence. (Doc. 15 at 14). The Commissioner states that plaintiff may request a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) for consideration of the additional evidence; however, the Commissioner argues that plaintiff has failed to establish the requirements for a Sentence Six remand.

As a general rule, a court cannot overturn an ALJ's decision based on evidence not in the record before the ALJ. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)). The Court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). Thus, § 405(g)

16

imposes three requirements for a Sentence Six remand: (1) the evidence must be "new"; (2) the evidence must be "material"; and (3) the plaintiff must show "good cause" exists for her failure to include the evidence in the prior proceeding. *Delgado*, 30 F. App'x at 549. Evidence is "new" if it was not in existence or was not available to the claimant at the time of the administrative proceeding. *Id*. (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" if there is a "reasonable probability that the Secretary would have reached a different disposition of [plaintiff's] disability claim if presented with the new evidence." *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988) (citations omitted). "Good cause" exists if there is a "valid reason" for the failure to obtain the evidence prior to the administrative proceeding. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The Sixth Circuit has rejected the argument that good cause exists simply because the evidence did not exist prior to the proceeding. *Id*. at 966 ("this circuit has taken a harder line on the good cause test" than simply relying on the age of the evidence).

Here, plaintiff has failed to satisfy her burden of showing that the requirements for a Sentence Six remand are satisfied. The Commissioner does not dispute that the evidence is "new." The progress note summarizes a treatment session that occurred in April 2012 following the ALJ decision. Dr. Skale co-signed the Medical Source Statement the following month. Thus, the first requirement for a Sentence Six remand is satisfied. However, plaintiff has not satisfied her burden to show that the evidence is "material." Plaintiff argues that Dr. Skale's signature on the Medical Source Statement is material because unlike nurse practitioner Fulton, Dr. Skale is a "treating physician" whose opinion is entitled to controlling or great weight. (Doc. 16 at 5). It does not appear from the record, though, that plaintiff's characterization of Dr. Skale as a treating physician is accurate. Plaintiff asserts that she began treating with Dr. Skale on

17

April 30, 2012. (Tr. 1011). The progress note from that date and the statement Dr. Skale co-signed on May 27, 2012, are the only two documents in the record prepared or signed by Dr. Skale. Dr. Skale did not indicate on the Medical Source Statement that she saw plaintiff on the date she co-signed the statement or on any other date. Thus, because there is evidence that Dr. Skale treated plaintiff only once before she co-signed nurse practitioner Fulton's assessment, Dr. Skale is not a treating doctor for disability purposes. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (doctor who examined the claimant once and prepared a single physical capacity evaluation did not "evince the type of ongoing treatment relationship contemplated by the plain text of [20 C.F.R. § 404.1502][8])." In the absence of treating source status, Dr. Skale's opinion was not entitled to controlling or great weight under the treating physician rule. *Id*. Thus, there is not a reasonable probability that the ALJ would have reached a different conclusion based on the Medical Source Statement co-signed by Dr. Skale.

Nor is there a "reasonable probability" that the ALJ would have reached a different result based on the April 30, 2012 progress note. Plaintiff asserts that the progress note mentions her subjective reports of auditory hallucinations, ongoing paranoia, and fears of her food being tampered with. (Doc. 16 at 5, citing Tr. 1011). Plaintiff alleges that these symptoms are more severe than those acknowledged by Drs. Orosz and Rudy. (*Id*. at 5). However, these subjective complaints are cumulative of other evidence that was in the record before the ALJ. (Tr. 832, 11/8/11- baseline paranoia noted; Tr. 838, 8/8/11- auditory hallucinations reported to be "really bad" in the past, "now soft"; Tr. 427, 4/17/09- Dr. Orosz noted some complaints of voices in plaintiff's head and feeling that "people are against her"; Tr. 431, 5/20/09- Dr. Harrison reported

---

[8] Section 404.1502 states that a physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.

18

plaintiff can become paranoid about others). Thus, it is not likely that the ALJ would have come to a different decision had the progress note been before her.

Accordingly, plaintiff has not carried her burden to show that the new evidence submitted after the ALJ hearing is "material." There is not a "reasonable probability" that if this evidence had been before the ALJ, she would have reached a different conclusion on the issue of disability. *Sizemore*, 865 F.2d at 711. Plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 10/31/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VALERIE J. SMITH,
    Plaintiff,

Case No. 1:13-cv-663
Beckwith, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).